## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ABDUL AHAD,** | : | **CIVIL NO. 1:16-CV-1864** |
| | : | |
| **Petitioner,** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CRAIG LOWE, et al.,** | : | |
| | : | |
| **Respondents** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

For the past fifteen years federal courts have frequently been tasked with the responsibility of defining the contours of the due process protections afforded to aliens who are detained for extended periods of time while awaiting the completion of immigration removal proceedings and removal from the United States. These cases have come before the courts in a variety of factual settings, against the backdrop of a statutory immigration system which often called for mandatory detention of classes of aliens facing removal from the United States. [1] Yet, while the claims and legal contexts

---

[1] Several civil immigration detention statutes provide for both mandatory and discretionary detention of certain classes of aliens. For example, 8 U.S.C. § 1225(b) applies to the class of detainable aliens deemed inadmissible on arrival, such as Ahad.  8 U.S.C. § 1225(b) subjects those aliens seeking admission at the border to mandatory detention pending removal proceedings. Likewise, 8 U.S.C. § 1226(a) authorizes the discretionary detention of aliens during the removal order

of these cases have varied widely, one recurring theme has emerged over time: Fundamental principles of fairness and due process compel that these aliens have some rights to bond consideration and may not face prolonged, indefinite immigration detention bereft of any right to due process in the form of an individualized bond determination.

This case involves a yet another variation on these emerging legal themes. The pertinent facts in this case can be simply stated: The petitioner, Abdul Ahad, is a native and citizen of Bangladesh who applied for admission to the United States on March 1, 2015, at or near Hidalgo, Texas. (Doc. 5 Ex. 1, Record of Inadmissible Deportable Alien at 2; Ex. 2 Notice to Appear.)  At the time that he presented himself at the border Ahad had no valid entry documents but indicated he wanted admission to the United States and wished to seek asylum. (Id.)

As an alien who presented himself for admission at the border, Ahad was classified as an "arriving alien," under 8 C.F.R. § 1001.1(q); that is, "an applicant for

_____

review process, but entitles those aliens to bond hearings. In addition, 8 U.S.C. § 1226(c) requires mandatory pre-removal detention without bond of aliens convicted of certain crimes. In turn, 8 U.S.C. § 1231(a)(6) applies to another category of aliens, persons who have received a final order of removal and are awaiting deportation. It provides for a ninety-day mandatory detention period pending removal of those aliens pursuant to the issuance of a final order of removal, but requires that those aliens not removed within that time frame be released on supervision, subject to certain exceptions (i.e., those aliens deemed inadmissible or deportable due to criminal activity).

admission coming or attempting to come into the United States at a port-of-entry." 8 U.S.C. § 1225(b) applies to "arriving aliens" like Ahad and sets forth procedures for the inspection and detention of aliens who are applicants for admission to the United States. Specifically, under § 1225(b), arriving aliens are inspected immediately upon arrival in the United States by an officer of the Department of Homeland Security Bureau of Customs and Border Protection. If, during that screening, the immigration officer determines that the alien is inadmissible because of the alien's inability to produce a "valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document . . . ," 8 U.S.C. § 1182(a)(7), "the officer shall order the alien removed from the United States without further hearing or review," a process referred to as expedited removal. See 8 C.F.R. § 1235.3(b)(1)(I), (b)(2)(ii) (providing that arriving aliens subject to expedited removal are not entitled to a hearing or appeal of this decision). However, if the alien "indicates an intention to apply for asylum  . . . or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(ii); see 8 C.F.R. § 235.3(b)(4) ("If an alien subject to the expedited removal provisions indicates an intention to apply for asylum, or expresses a fear of persecution or torture, or a fear of return to his or her country, the inspecting officer shall not proceed further with removal of the alien until the alien has been referred for an interview by an asylum officer . . . .").

If the asylum officer determines at the time of the interview that the alien has a credible fear of persecution, that alien "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Should the alien receive a positive credible fear determination, the alien will be subsequently placed in removal proceedings. 8 C.F.R. § 235.6(a)(1)(ii). However, during the pendency of these proceedings the statute and regulations provide that the alien will remain detained pursuant to 8 U.S.C. § 1225(b)(2)(A), subject only to the exercise of the Attorney General's discretionary parole authority. Thus, the only prescribed statutory mechanism for an alien's release from § 1225(b) custody is under 8 U.S.C. § 1182(d)(5)(A), which vests the Attorney General with discretion to release an alien temporarily on parole "under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit . . . ." Parole decisions under § 1182 are purely discretionary and immigration judges lack statutory authority to determine whether an arriving alien may be released on bond during removal proceedings. See 8 C.F.R. § 1003.19(h)(2)(i)(B) ("[A]n immigration judge may not redetermine conditions of custody imposed by the Service with respect to the following classes of aliens: . . . (B) Arriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act . . . .").

In this case, pursuant to this statutory scheme, on March 27, 2015, Ahad was served with a Notice to Appear, which informed him that he was an arriving alien and

charged him with inadmissibility as an alien with no valid entry documents. (Id., Ex. 2 at 1.) Ahad then submitted to interviews and immigration judge proceedings aimed at determining whether he had a credible fear of persecution in his homeland, Bangladesh. During these interviews and proceedings, Ahad detailed the nature of his fear of persecution in his homeland. After hearing this evidence, on February 24, 2016, the Immigration Judge granted Ahad's application for protection under the Convention Against Torture (CAT), but denied his applications for asylum and withholding of removal. (Id., Ex. 3 Board of Immigration Appeal's (BIA) Decision of August 5, 2016 at 1.) This ruling was premised on the judge's finding that there was a: "clear probability that the government of Bangladesh would acquiesce in any torture [Ahad] might experience at the hands of [political rivals]." (Id.) That finding, in turn, rested upon Ahad's reports that he had been subjected to assault and threats in Bangladesh as a result of his political activities in that country. (Id.) However, on August 5, 2016, this immigration judge decision was vacated by the Board of Immigration Appeals (BIA) on appeal. (Id.) Citing what it perceived to be discrepancies in Ahad's accounts of these threats and assaults, the BIA and "remanded for a credibility finding and a new decision on the merits." (Id.)

In the meanwhile, Ahad has remained detained in immigration custody for the past 20 months without any bond consideration whatsoever. This prolonged pre-removal detention inspired Ahad to file this petition for writ of habeas corpus on

September 9, 2016. (Doc. 1.) Citing cases which have created a presumptive right to bond consideration for criminal aliens detained pre-removal under other provisions of the Immigration and Naturalization Act, <u>Chavez-Alvarez v. Warden York County Prison</u>, 783 F.3d 469, 475 (3d Cir. 2015)(construing 8 U.S.C. §1226), Ahad sought individualized bond consideration in this petition.

The government opposes this petition. In its opposition the government adopts a categorical view, arguing that it possesses the authority to detain Ahad for an indefinite and prolonged period without any bond consideration pursuant to 8 U.S.C. §1225(b)(2)(A). This argument rests upon several legal pillars. First, the government relies upon the statutory text of §1225(b), which requires mandatory civil detention during the pendency of Ahad's removal proceedings, but also vests the Attorney General with unreviewable authority to parole an arriving alien. The Government then argues that <u>Chavez-Alvarez</u> is inapplicable here, given that Ahad's detention is controlled by a different immigration detention statute than that addressed in <u>Chavez-Alvarez</u>. Finally, the Government argues that "arriving aliens," like Ahad, who have never been admitted to the United States, enjoy less constitutional protections than other detained aliens, and thus, can be subject to indefinite detention. (Doc. 5.)

For the reasons set forth below, we disagree and find that the legal pillars of the respondent's categorical position fail when cast against the rising tide of case law which recognizes certain due process protections in this field. Therefore, we

recommend that this petition be granted, and Ahad be afforded prompt bond consideration.

## II.   Discussion

### A.   Development of Due Process Protections for Immigration Detainees

The instant federal habeas corpus petition called upon us to reflect upon the development of constitutional case law defining the contours of the right of immigration detainees to receive a minimal level of due process protection, an individualized bond hearing when confronted with indefinite confinement. As we have observed, these cases defining the due process which an detained alien is entitled to receive have arisen in a variety of factual contexts. Some cases have involved detention following the entry of a final removal order; others have examined the requirements of due process in the setting where an alien is detained pending final removal hearings. Furthermore, courts have assessed these due process considerations when examining claims brought both by aliens who had been admitted to the United States, but now are subject to removal, as well as due process arguments advanced by aliens like Ahad who were never legally admitted to the United States. While these cases have been many and varied, one theme runs through the case law; an emerging recognition that the rising tide of case law holds that the basic requirements of due process call for some individualized bond consideration before persons are consigned to detention of

an indefinite and unreasonable duration.

This developing legal consensus first began to emerge in cases involving detained aliens who were the subject of final removal orders. For aliens awaiting removal, the contours of this right to due process was defined by the United States Supreme Court's decision in <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001). In <u>Zadvydas</u>, the United States Supreme Court extended due process protections to aliens who were subject to final removal orders and were awaiting  removal from the United States. While the Court sustained the validity of the initial mandatory detention period for such aliens during the ninety-day removal period prescribed by 8 U.S.C. § 1231(a)(1) (A), beyond this initial 90-day period the Court concluded that: "we think it practically necessary to recognize some presumptively reasonable period of detention." <u>Id</u>. at 701.

The Court then observed that:

> While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months . . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in

confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

Taken together, 8 U.S.C. § 1231(a)(1)(A) and Zadvydas created a statutory and constitutional framework for protecting the rights of aliens who are detained pursuant to administratively final removal orders. Under this framework, such aliens shall be detained for the first 90 days of the removal period and further detention beyond this 90-day period will be presumed reasonable up to a period of 6 months, at which time aliens subject to final removal orders should either be removed, or be given bail consideration.

Following this seminal decision, the government initially sought to limit the reach of Zadvydas to aliens who had been admitted to the United States but were now subject to a final removal order, and invited the courts to conclude that aliens–like Ahad–who were never admitted to the United States were not entitled to these minimal due process protections. In the post-final removal order context, the United States Supreme Court has expressly rejected this invitation to limit these due process protections to admitted aliens, while denying the same basic protections to aliens not admitted to the United States. In Clark v. Martinez, 543 U.S. 371 (2005), the Court explicitly extended its holding in Zadvydas to prohibit indefinite detention of both inadmissible aliens and admissible aliens under § 1231(a)(6). According to the Court

the principle of constitutional avoidance compelled this result. As the Court observed:

> The Government . . . argues that the statutory purpose and the constitutional concerns that influenced our statutory construction in Zadvydas are not present for aliens . . . who have not been admitted to the United States. Be that as it may, it cannot justify giving the *same* detention provision a different meaning when such aliens are involved. It is not at all unusual to give a statute's ambiguous language a limiting construction called for by one of the statute's applications, even though other of the statute's applications, standing alone, would not support the same limitation. . . . [W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the natural consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail—whether or not those constitutional problems pertain to the particular litigant before the Court.

Id. at 380–81.

Thus, when construing the post-final removal order detention statute, 8 U.S.C. §1231, we are now enjoined to afford the same fundamental due process protections to all aliens, regardless of whether they were admitted to the United States or denied admission.

The rising tide of this case law has also been extended to the indefinite detention of aliens, like Ahad, who are held as they await removal proceedings. Initially these cases construed 8 U.S.C. §1226(c), another mandatory detention statute which pertained to criminal aliens awaiting removal decisions, and provided that:

( c ) Detention of Criminal Aliens--

(1) Custody.--The Attorney General *shall* take into custody any alien who.--

       . . .

(B) is deportable by reason of having committed any offense covered in section 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D).

8 U.S.C. § 1226(c)(1)(B)(emphasis added).

The United States Supreme Court's decision in <u>Demore v. Kim</u>, 538 U.S. 510 (2003), first addressed the issue of whether §1226 (c)(1)(B)'s mandatory detention provision, standing alone, violated due process, and held that it did not.   In reaching this conclusion the Court in <u>Demore</u> emphasized the very brief duration of most removal proceedings which rarely exceeded five months, <u>id</u>. at 530, and noted that the six-month delay experienced by the alien in that case was a product of his own actions which delayed the entry of a final removal order. <u>Id</u>. at 531, n. 15. Given the fixed and finite term of any pre-removal detention, the Court held that the fact of this mandatory detention did not violate due process. Thus, <u>Demore</u> held that mandatory detention of certain criminal aliens pending removal proceedings does not, by itself, offend due process. However, the <u>Demore</u> Court based this ruling upon its understanding of the short, fixed and finite term of any detention prior to removal. Therefore, while <u>Demore</u> addressed the due process issues that arise from the fact that, for certain criminal aliens, detention pending removal is mandatory, it is clear that Courts still have an independent constitutional responsibility under §1226(c) to assess whether the duration of any mandatory detention is so extended and unreasonable as to violate due process. Moreover, in those instances where the period of pre-removal detention under §1226(c)

11

is found to be excessive courts have granted habeas corpus relief to detained aliens. See, e.g., Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005); Ly v. Hanson, 351 F.3d 263 (6th Cir. 2004); Alli v. Decker, No. 09-698, 2009 WL 2430882 (M.D. Pa. Aug. 10, 2009); Occelin v. District Director, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009); Victor v. Mukasey, No. 08-1914, 2008 WL 5061810 (M.D. Pa. Nov. 25, 2008); Wilks v. U.S. Dep't of Homeland Security, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008); Nunez-Pimentel v. U.S. Dep't of Homeland Security, No. 07-1915, 2008 WL 2593806 (M.D. Pa. June 27, 2008); Prince v. Mukasey, 593 F. Supp. 2d 727 (M.D. Pa. 2008); Madrane v. Hogan, 520 F. Supp. 2d 654 (M.D. Pa. 2007).

The considerations which must be taken into account in any due process analysis of an excessive pre-removal delay claim under §1226 have been outlined for us in Diop v. ICE/Homeland Sec., 656 F.3d 221, 234-35 (3d Cir. 2011). In essence, "Diop laid out a two step-process: a reviewing court must first determine that a detention has been unreasonably long, and following such a determination, must determine whether the unreasonable detention is necessary to fulfill 1226's purposes." Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 269-70 (3d Cir. 2012).

More recently, in Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469 (3d Cir. 2015), the court of appeals has provided us with an analytical paradigm to apply when assessing these immigration excessive detention claims under §1226(c) in

a pre-removal context. As the court explained in outlining the legal terrain in this field:

> Before 1996, significant numbers of aliens convicted of serious crimes were taking advantage of their release on bond as an opportunity to flee, avoid removal, and commit more crimes. Demore v. Kim, 538 U.S. 510, 518–19, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). Congress fixed this problem by enacting section 1226(c), expanding the range of serious crimes for which the Government was required to detain convicted aliens. Notably, section 1226(c) does not give the Attorney General any authority to release these aliens on bond. Id. at 521, 123 S.Ct. 1708. The Supreme Court left no doubt that the Government's authority under section 1226(c) to detain aliens without an opportunity for bond complies with the Constitution. Id. at 531, 123 S.Ct. 1708. However, as we discuss below, we read Demore as also recognizing that there are limits to this power. Diop, 656 F.3d 221; Leslie v. Attorney Gen. of the United States, 678 F.3d 265 (3d Cir.2012). When the Supreme Court upheld the constitutionality of the law in Demore, it also gave us insight into how, from a due process perspective, section 1226(c)'s allowance of detention without bail worked. The Court reiterated the fundamental idea that aliens are protected by constitutional due process. Demore, 538 U.S. at 523, 123 S.Ct. 1708 (citing Reno v. Flores, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)). But, it put the alien's issue in perspective, saying " '[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.' " Id. at 521, 123 S.Ct. 1708 (quoting Mathews v. Diaz, 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976)). The Court went on to say that applying " 'reasonable presumptions and generic rules' " to groups of aliens—for purposes of due process—can be consistent with the idea that aliens can be treated differently. Id. at 526, 123 S.Ct. 1708 (quoting Flores, 507 U.S. at 313, 113 S.Ct. 1439); see also Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952). The Court, in essence, concluded that Congress lawfully required the Attorney General to make presumptions of flight and dangerousness about the alien solely because he belonged to the group of aliens convicted of the types of crimes defined in section 1226(c).

Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 472 73 (3d Cir. 2015).

The court in <u>Chavez-Alvarez,</u> however, went on to recognize that courts have an independent responsibility to assess whether the duration of any mandatory detention is so extended and unreasonable as to violate due process. Further, the court in <u>Chavez-Alvarez</u> provided us with clear guidance in assessing the reasonableness of the duration of any mandatory immigration detention. This determination entails a balancing test. While noting that "[b]y its very nature, the use of a balancing framework makes any determination on reasonableness highly fact-specific," <u>Chavez-Alvarez v. Warden York Cnty. Prison</u>, 783 F.3d 469, 474 (3d Cir. 2015), the court observed that there are several guideposts which we must consider. First, in a case where an alien is prosecuting a good faith challenge to his or her removal from the United States, the appellate court held that, " beginning sometime after the six-month time frame considered by <u>Demore</u>, and certainly by the time [the alien] had been detained for one year, the burdens to [the petitioner's] liberties outweigh[] any justification for using presumptions to detain him without bond to further the goals of the statute. We conclude that the underlying goals of the statute would not have been, and will not now be undermined by requiring the Government to produce individualized evidence that [the petitioner's] continued detention was or is necessary." <u>Chavez-Alvarez v. Warden York Cnty. Prison</u>, 783 F.3d 469, 478 (3d Cir. 2015).

In prescribing this one-year time frame beyond which the presumption of

detention is sufficiently eroded that an individualized bail consideration is necessary as a matter of due process, the appellate court also defined what showing the government must make in order to justify the continued detention of the petitioner. According to the court, the immigration statute " 'implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community.' " Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 475 (3d Cir. 2015). Further, once "detention becomes unreasonable, the Due Process Clause demands a hearing, *at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute*." Diop v. ICE/Homeland Sec., 656 F.3d 221, 233 (3d Cir. 2011)(emphasis added.)

The recent constitutional jurisprudence forms the prologue for our consideration of the current habeas corpus petition. Presently, the courts recognize a due process right to some individualized bond consideration by aliens who are detained subject to final orders of removal. This right exists for alien detainees regardless of whether they were admitted to the country, or not. Further, in the related statutory context of pre-removal mandatory detention of criminal aliens subject to removal pursuant to 8 U.S.C.

§1226(c), this court recognizes a due process right to an individualized bond hearing after the pre-removal detention reaches a presumptively unreasonable duration, one year. It is against this backdrop that we now consider Ahad's petition, which raises constitutional concerns regarding the mandatory pre-removal detention provisions of §1225(b).

> **B.**   **Pre-Removal Detention of Aliens Pursuant to §1225(b) is Subject to Due Process Limitations Which Require an Individualized Bond Consideration Once the Detention Becomes Unreasonable**

In this case we are presented with a due process claim relating to the 20 month detention of an arriving alien pursuant to 8 U.S.C. §1225(b), a prolonged period of detention whose on-going duration is unknown, and a period of detention which has transpired without any bond consideration whatsoever. Beginning with the statute itself, by its terms, §1225(b), calls for the mandatory detention of arriving aliens who voice a fear of persecution in their homelands, stating that such aliens: "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). The mandatory nature of this detention is tempered by statute as a matter of executive grace through the Attorney General's wholly discretionary parole authority under 8 U.S.C. § 1182(d)(5)(A) to release an alien temporarily on parole "under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit . . . ." While acknowledging that this

mandatory detention appears subject to a wholly unreviewable exercise of executive branch discretion, respondents nonetheless assert that the courts should not act in this field, given the broad discretion afforded to the government when controlling access to its borders and entry by aliens into this country.

On this score we recognize that: "The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." Zadvydas, 533 U.S. at 693. However, while inadmissible aliens are not afforded the full panoply of protections under the Constitution, the Supreme has recognized that inadmissible aliens are entitled to some modicum of due process under the Fifth Amendment. Zadvydas, 533 U.S. at 694 (holding that, although the Due Process Clause protects an alien subject to a final order of deportation, "the nature of that protection may vary depending upon status and circumstance"). Further, as the United States Court of Appeals for the Third Circuit has aptly observed: "Even an excludable alien is a 'person' for purposes of the Fifth Amendment and is thus entitled to substantive due process." Chi Thon Ngo v. I.N.S., 192 F.3d 390, 396 (3d Cir.1999). Moreover, in the context of the post-final removal order detention statute, 8 U.S.C. §1231, the Supreme Court has held that the distinction between admissible aliens, and those who have not been admitted to the United States, does not call of denial of a basic requisite of due process: the opportunity to have an individualized bond

determination when an alien faces protracted detention of an undefined and unreasonable nature. See Clark v. Martinez, 543 U.S. 371 (2005).

Likewise in the context of pre-removal mandatory detention of criminal aliens, it is now well-settled that there exists a due process right to individualized bond consideration once pre-removal detention has reached a presumptively unreasonable duration. Indeed, the contours of that right have been defined for us by the United States Court of Appeals for the Third Circuit which states that: " beginning sometime after the six-month time frame considered by Demore, and certainly by the time [the alien] had been detained for one year, the burdens to [the petitioner's] liberties outweigh[] any justification for using presumptions to detain him without bond to further the goals of the statute. We conclude that the underlying goals of the statute would not have been, and will not now be undermined by requiring the Government to produce individualized evidence that [the petitioner's] continued detention was or is necessary." Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 (3d Cir. 2015).

Given the due process rights afforded to excludable aliens in a post-final removal order setting, and the due process rights recognized in a pre-removal context to criminal aliens detained pursuant to 8 U.S.C. §1226(c), Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 475 (3d Cir. 2015), many courts have rejected the

invitation made by the respondents here to categorically deny arriving aliens who are detained pursuant to §1225(b) any opportunity for bond consideration.  Instead, these courts have held that arriving aliens detained pursuant to §1225(b) enjoy the same due process right afforded to many other classes of detained aliens: the right to an individualized bond determination once the length of their pre-removal detention has become unreasonable. See, e.g., Rodriguez v. Robbins, 804 F.3d 1060, 1065 (9th Cir. 2015), cert. granted sub nom. Jennings v. Rodriguez, 136 S. Ct. 2489 (2016)[2]; Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006); Gregorio-Chacon v. Lynch, No. CV 16-2768 (SDW), 2016 WL 6208264, at *4 (D.N.J. Oct. 24, 2016)(applying due process analysis to §1225(b) detention case but denying petition on its merits);  Behre v. Johnson, Civ. No. 3:16-CV-189, (M.D. Pa. July 27, 2016) (Report and Recommendation of Judge Mehalchick)[3]; Maldonado v. Macias, 150 F. Supp. 3d 788, 812 (W.D. Tex. 2015)(granting habeas relief in §1225(b) detention case after two

---

[2]We note that Robbins is under Supreme Court review, a factor which in some instances could caution in favor of delay pending receipt of guidance from the Supreme Court. We do not recommend such delay in this case in recognition of two factors. First, the petitioner has been held without any bond consideration for 20 months. Second, given the protracted duration of this detention, in our view greater harm results from further delaying a bond hearing than would flow from having a hearing, and then perhaps having to revisit the detention issue in light of the Supreme Court's guidance.

[3]We gratefully acknowledge Judge Mehalchick's pioneering legal analysis in this field, which greatly informs our own assessment of this case.

years' detention).

We find the rationale of these cases compelling. This rising sea of case law acknowledges the historic development of due process jurisprudence in this field. That developing case law has consistently determined that detained aliens are entitled to some essential measure of due process in the form of a bond hearing once their detention reaches an unreasonable duration. Case law extends this right in pre-and post-removal settings. It confers this right upon both aliens admitted to this country, and excludable aliens. Indeed, it even confers this right upon aliens who have been convicted of crimes in the United States and are subject to removal due to those prior convictions. Given the scope of the due process protections provided to detained aliens, and acknowledged by the courts in the past, it would be anomalous to completely deny this modest measure of due process to detainees held pursuant to §1225(b).

Finding that arriving aliens detained pre-removal pursuant to §1225(b) have a due process right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable, we also find that the 20 month duration of Ahad's detention has reached this presumptively unreasonable length. On this score, we note that some courts have held that detention exceeding six months is presumed unreasonable under §1225(b); see, e.g., Rodriguez v. Robbins, 804 F.3d 1060, 1065 (9th Cir. 2015), cert. granted sub nom. Jennings v. Rodriguez, 136 S. Ct.

2489 (2016);  Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006), while the United States Court of Appeals for the Third Circuit, in the context of pre-removal detention of criminal aliens, has defined  12 months as the presumptively unreasonable duration of a period of immigration detention. Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 475 (3d Cir. 2015). While we acknowledge these competing legal benchmarks triggering due process analysis in this field, we need not define with precision the minimum threshold of delay necessary to trigger due process protections under §1225(b), because the duration of the detention endured here by Ahad–20 months–far exceeds any of these judicially prescribed thresholds.

Finding that an individualized bail hearing is appropriate in this case, we recommend that the district court defer to the Immigration Judge in the first instance, and refer this matter to the Immigration Judge for a bond determination. Indeed, in Chavez-Alvarez, the appellate court suggested that, in many instances, this initial bail determination can, and should, be made by the Immigration Judge, applying the constitutional benchmarks outlined by the courts. Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 n.12 (3d Cir. 2015). This guidance, in turn, is consistent with other case law in this field, where federal courts have frequently referred these bail questions to Immigration Judges in the first instance. See, e.g., Casas-Castrillon v. Dep't of Homeland Security, 535 F.3d 942 (9th Cir. 2008); Reid

v. Donelan, 991 F. Supp. 2d 275 (D. Mass. 2014); Chen v. Aitken, 917 F. Supp. 2d 1013 (N.D. Cal. 2013); Sengkeo v. Horgan, 670 F. Supp. 2d 116 (D. Mass. 2009); Bourguignon v. MacDonald, 667 F. Supp. 2d 175 (D. Mass. 2009); Wilks v. U.S. Dep't of Homeland Security, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008).

Yet, while we are "[m]indful of the deference which should be accorded in the first instance to agency decision-making processes," Leslie v. Holder, 865 F. Supp. 2d 627, 631 (M.D. Pa. 2012), a factor which weighs in favor of allowing an Immigration Judge to make this initial bail determination, we also recognize that the district court has an independent responsibility in this case. Indeed, this court has in a number of instances conducted bail review hearings in immigration habeas matters. Occelin v. District Director, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009)(two years detention, court schedules hearing to review case). In still other instances, the remedy imposed by the court has been an order directing the outright release of the alien.) See, e.g., Madrane v. Hogan, 520 F. Supp. 2d 654 (M.D. Pa. 2007); Victor v. Mukasey, No. 08-1914, 2008 WL 5061810 (M.D. Pa. Nov. 25, 2008); Nunez-Pimentel v. U.S. Dep't of Homeland Security, No. 07-1915, 2008 WL 2593806 (M.D. Pa. June 27, 2008.)

The authority of this court to set conditions of release for a petitioner in a federal habeas corpus proceeding springs from several well-established legal sources.

Settled case law has long acknowledged that the power to set bail in habeas proceedings is a legal and logical concomitant of the court's habeas corpus jurisdiction. In fact, our authority to act in these matters has been clearly recognized, and carefully defined, by the courts which have held generally in habeas corpus matters that the court may consider bail motions. The courts have also prescribed the legal standards for such relief, stating that:

> [C]ourts that have been faced with requests for bail prior to ruling on a habeas petition have developed standards requiring that a habeas petitioner (1) make out a clear case for habeas relief on the law and facts, or (2) establish that exceptional circumstances exist warranting special treatment, or both. See, e.g., Eaton v. Holbrook, 671 F.2d 670, 670 (1st Cir.1982); Iuteri v. Nardoza, 662 F.2d 159, 161 (2d Cir.1981); Calley v. Callaway, 496 F.2d 701, 702 (5th Cir.1974).

Lucas v. Hadden, 790 F.2d 365, 367 (3d Cir. 1986).

This settled principle, in turn, has been expressly extended to habeas corpus petitions lodged by immigration detainees in Mapp v. Reno, 241 F.3d 221 (2d Cir. 2001), where the court of appeals correctly concluded that in extending this settled tenet of habeas corpus jurisdiction to petitions by immigration detainees, "we are not required to break new ground so much as to revisit a place where we have been before." Mapp v. Reno, 241 F.3d at 225. The Mapp court's analysis of this issue is consistent with case law in this circuit, Lucas v. Hadden, 790 F.2d 365, 367 (3d Cir. 1986), is highly persuasive, and this court has previously cited Mapp's analytical

paradigm with approval. See Nasr v. Hogan, No. 08-415, 2008 WL 2705533 (M.D. Pa. July 10, 2008).

Therefore, in the absence of action by immigration officials it is evident that this court retains the legal authority to conduct bond proceedings in this matter. It is clear, however, that deference to the agency's judgment cautions in favor of allowing the agency the opportunity to afford this hearing to the petitioner in the first instance.

### III.   **Recommendation**

Accordingly, for the foregoing reasons IT IS RECOMMENDED as follows:

1.   Petitioner's petition for writ of habeas corpus (Doc. 1) should be GRANTED IN PART to the extent that Petitioner be afforded an individualized bond hearing.

2.   Within a specified period following the adoption of this Report and Recommendation, an immigration judge should be directed to afford the Petitioner an individualized bail hearing. At this hearing, the immigration judge must make an individualized inquiry into whether detention is still necessary for the purposes of ensuring that the Petitioner attends removal proceedings and that his release will not pose a danger to the community. Further, the government bears the burden of presenting evidence at this hearing and proving that Petitioner's continued detention is necessary to

fulfill the purposes of the detention statute. <u>Diop v. ICE/Homeland Sec.</u>, 656 F.3d 221, 233 (3d Cir. 2011).

3.      The parties should report to the District Court on the outcome of the individualized bail determination no later than three (3) days after the immigration judge's hearing.

4.      If the immigration judge does not hold an individualized bond hearing consistent with the legal benchmarks outlined in this Report and Recommendation, the District Court should consider conducting its own bond determination, under the standards governing bail in habeas corpus proceedings, at a date and location to be determined.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her

discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 14th day of November 2016.

_S/Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge